## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| DOMINIC MUSARRA, 262 ½ East State Street Athens, Ohio 45701, | : : | Case No. **C 2  0 5  5 4 5** |
| -and- | : | JUDGE **JUDGE MARBLEY** |
| KEVIN KLUG, 38101 Chase Run Road Albany, Ohio 45710, | : | MAGISTRATE JUDGE **MAGISTRATE JUDGE KING** |
| -and- | : | |
| CHARLES EVERETT, JR., 1861 Mill Street Albany, Ohio 45710, | : | CLASS ACTION |
| | : | **Jury Demand Endorsed Hereon** |
| Individually and as named representatives of those similarly situated, | : : | |
| Plaintiffs, | : | |
| vs. | : | |
| DIGITAL DISH, INC., c/o Statutory Agent Jerry R. Anderson 5901 Country Road 203 Millersburg, Ohio 44554 | : : | |
| Defendant. | : : | |

05 JUN -3 PM 12: 11

U.S. ___

## COLLECTIVE ACTION COMPLAINT FOR DECLARATORY JUDGMENT AND COMPENSATION UNDER 29 U.S.C. § 201, *ET SEQ.* AND CLASS ACTION COMPLAINT UNDER O.R.C. CHAPTER 4111

## I.      **PRELIMINARY STATEMENT**

1.      Plaintiffs are current and former employees of Defendant and bring this action on behalf of themselves and all similarly-situated current and former employees.  This is an action for declaratory, injunctive, and equitable relief, liquidated damages, attorneys' fees, costs and interest under 28 U.S.C. Secs. 2201 and 2202 and the Fair Labor Standards Act, as amended, 29 U.S.C. Sec. 216(b) ("FLSA"), and an individual complaint and class action complaint under Ohio's Minimum Fair Wage Standards Act regarding payment of overtime pay.

## II.     **JURISDICTION AND VENUE**

2.      Jurisdiction of this action is conferred on this Court by 29 U.S.C. Sec. 216(b), 28 U.S.C. Sec. 1331 and 28 U.S.C. Sec. 1337, and the Court's supplemental jurisdiction.  This civil action arises under the Constitution and laws of the United States and the laws of the State of Ohio.

3.      Venue lies in this forum pursuant to 28 U.S.C. Sec. 1391(b) and S.D. Civ. R. 82.1 because the claim arose in the Southern District of Ohio where at all times material herein, the Plaintiffs were employed by Defendant Digital Dish, Inc.

## III.    **PARTIES**

4.      Plaintiff Dominic Musarra is a resident of Athens County, Ohio and the Southern District of Ohio, and is a former employee of defendant Digital Dish, Inc.

5.      Plaintiff Kevin Klug is a resident of Meigs County, Ohio and the Southern District of Ohio, and is a former employee of defendant Digital Dish, Inc.

2

6.      Plaintiff Charles Everett, Jr. is a resident of Athens County, Ohio and the Southern District of Ohio, and is a former employee of defendant Digital Dish, Inc.

7.      Plaintiffs have given their written consent to be party Plaintiffs in this action pursuant to U.S.C. Sec. 216(b), true and accurate copies of which are appended hereto.

8.      Plaintiffs bring this case on behalf of themselves and on behalf of all other persons similarly situated who are current or former employees of defendant who agree in writing to join the first cause of action seeking recovery under the FLSA.

9.      Defendant is both a corporation for profit duly licensed to do business within the State of Ohio, and an "employer" within the meaning of 29 U.S.C. Sec. 203(d) and O.R.C. Sec. 4111.01(C).  It is principally involved in the installation of digital satellite dishes.


IV.     **FACTS**

10.     Plaintiff Dominic Musarra was employed by Defendant from June of 2003 until October 11, 2004, as a Satellite Technician.

11.     Plaintiff Kevin Klug was employed by Defendant from March, 2004 until October 11, 2004, as a Satellite Technician.

12.     Plaintiff Charles Everett, Jr., was employed by Defendant from March of 2004 until December of 2004 as a Satellite Technician.

13.     Plaintiffs' principal job duties for Defendant included the installation of digital satellite dishes, upgrades of digital satellite dishes and service of digital satellite dishes in private residences throughout Southern Ohio.

3

14.     At the various times they were hired by Defendant, all Plaintiffs were required to attend a class for new employees. At this class, all of the Plaintiffs were told by Defendant's employees Jerry Anderson and Dick Schneider that the job they were applying for was a six day a week job, and that they were expected to work six days a week and that if they missed any days, their employment with the company would end.

15.     When Plaintiffs' employment with Defendant began, they went through a training period which lasted anywhere from four to six weeks.

16.     During their training period, Plaintiffs were paid $50.00 per day by the company.

17.     During the training period, Plaintiffs were paid with a handwritten checks from the company which were not attached to pay stubs, and which did not itemize any withholdings from the check.

18.     During the training period, Plaintiffs often worked in excess of 40 hours per week, often working greater than eight hours per day six days per week.

19.     After their training periods were completed through July of 2004, Plaintiffs were paid "by the job," in that they received a certain amount of compensation for each cable dish installed.

18.     While employed by Defendant, Plaintiffs would usually begin their day by driving to Defendant's place of business in Jackson, Ohio, to pick up installation supplies. Plaintiffs would sometimes begin their workday at home, building the satellite dishes they planned to install that day, a process that would average about forty-five minutes of work time.

20.     Plaintiffs would typically arrive at Defendant's Jackson location around 6:30 a.m. each morning. Once there, the loading process would usually take from one to three hours, depending on the order in which the Satellite Technicians arrived.

4

21. Plaintiffs were required to call in their daily route to Defendant's office by 7:30 a.m. each morning. If they failed to do so, a substantial amount of money would be docked from their paycheck. Plaintiffs would typically call in their route around 6:00 A.M. because it was more likely that someone would be there to answer the phone around that time, allowing them to record that they had called in so that they could avoid having their pay docked.

22. Plaintiffs were required to be at their first job by 8:00 A.M. However, due to the wait at the Jackson location it was often impossible for Plaintiffs to do so. Often Plaintiffs would still be at the Jackson location at 8:00 A.M. Although Plaintiffs could have their pay docked for not being at their first job by 8:00 A.M., in practice this was rarely done.

23. After they had picked up their supplies from the Jackson, Ohio facility, Plaintiffs would drive to their first installation job. They would then continue from job to job until they had finished their workday, at which point they would return home.

24. Plaintiffs were required to complete their last job by 6:00 P.M. If they failed to do so, a substantial amount of money would be docked from their paycheck. Due to the volume of the work that Plaintiffs were required to do, they were rarely able to accomplish this and would often have their pay docked.

25. After they returned home after their final job was completed, Plaintiffs would receive their work orders for the next day via e-mail or fax. Plaintiffs were then required to "pre-call" each of the customers for whom they would be doing service the next day and explain the work they would be doing and their estimated arrival time and the length of time that they would be there. They were also required to answer customer questions. These phone calls often took as much as two hours per night.

5

26.     In addition to the above described duties, Plaintiffs would typically spend 2-3 hours per week doing paperwork for Defendant. If paperwork was completed incorrectly or incompletely, Defendant would substantially dock plaintiffs' pay and/or require Plaintiffs to drive back to the customer to fix the problem in addition to their regular duties.

27.     If Plaintiffs completed an installation job and a customer called back reporting problems within a year, Plaintiffs were required to drive to the customer's house to make repairs in addition to their regular duties.

28.     After their training periods were completed and before the mid-summer of 2004, Plaintiffs routinely worked in excess of 40 hours per week, often working greater than eight hours per day six days per week.

29.     In mid-summer, 2004, Plaintiffs were called into a meeting with management. In that meeting, although they were still being paid "by the job," they were told that they were now to keep track of the hours they worked on a time sheet.

30.     Upon information and belief, Defendant called this meeting because complaints had been made that employees were not receiving overtime.

31.     Also at this meeting, Plaintiffs were told that if anyone turned in a time sheet claiming more than forty hours were worked, their employment would be terminated.

32.     Also at this meeting, Plaintiffs were told that they should not include their drive time between jobs if they stopped along the way to get food or a drink.

33.     Also at this meeting, Plaintiffs were told that they could include their other drive time on their time sheets, but that they should remember that if they exceeded forty hours they would be terminated.

6

34.     The time sheets provided to Plaintiffs required them to write down the number of hours that they had worked per job for one week, and did not request that Plaintiffs write down the number of hours they worked each day during the week.

35.     The time sheets provided to Plaintiffs included language at the bottom that working over forty hours would result in discipline.

36.     Following the meeting, Plaintiffs continued to work in excess of forty hours per week, often working greater than eight hours per day six days per week.

37.     Following the meeting, Plaintiffs would only write down forty or less hours per week on their time sheets, for fear of losing their jobs, although they were working well in excess of these hours.

38.      In September of 2004, Defendant implemented a new computer call-in system by which Plaintiffs were also required to call in by 12:00 P.M. and state that they had finished their A.M appointments.  If they failed to do so, a substantial amount of money would be docked from their paycheck.

39.     Due to their scheduling, often it would have been impossible for Plaintiffs to finish their A.M. appointments by 12:00 P.M..  Plaintiffs would routinely call in by 12:00 P.M, however, and indicate that they were done with their A.M. appointments when in fact they were not, to avoid having their check docked.  Defendant at all times had full knowledge that plaintiffs were almost never in fact done with their A.M. appointments by 12:00 P.M.

40.      Beginning in September of 2004, Plaintiffs were also required to call in by 5:00 P.M. and state that they had finished their P.M appointments.  If they failed to do so, a substantial amount of money would be docked from their paycheck.

7

41.     Due to their scheduling, often it would have been impossible for Plaintiffs to finish their P.M. appointments by 5:00 P.M..  Plaintiffs would routinely call in by 12:00 p.m., however, and state that they were done with their A.M. appointments when in fact they were not, to avoid having their paycheck docked.  Defendant at all times had full knowledge that Plaintiffs were almost never in fact done with their P.M. appointments by 5:00 P.M.

42.     At no time did Plaintiffs receive any overtime pay for hours worked in excess of forty per week.

43.     At all times material, Defendant was aware that Plaintiffs were working well in excess of forty hours per week during their training period.

44.     Defendant was aware that Plaintiffs were working well in excess of forty hours per week following their training periods but before the July 2004 meeting.

45.     Defendant was aware that Plaintiffs were working well in excess of forty hours per week following their training periods and following the July 2004 meeting despite the fact that their time sheets only claimed forty hours per week.

46.     Defendant was aware of how early Plaintiffs were coming in to pick up installation supplies in the morning, the length of time spent doing so, and that the time so spent was not being billed to any job.

47.     Defendant was aware that Plaintiffs were not billing their pre-call time in the evening to any particular job.

48.     Defendant was aware that Plaintiffs were not billing their paperwork time to any particular job.

8

49.     Defendant was aware that time Plaintiffs spent making trips to customers' residences to make repairs within the first year or to complete additional paperwork was not being billed to any particular job.

50.     Each work order provided to Plaintiffs by Defendant contained an estimated installation time.  The aggregate weekly estimated installation times were well in excess of the time plaintiffs claimed on their time sheets.

51.     Defendant also employs other employees in the same capacity as Plaintiffs.  These employees are similarly situated to Plaintiffs.   Upon information and belief, these employees are also "Satellite Technicians."

52.     In reckless disregard of the FLSA protection afforded Plaintiffs and similarly situated individuals, Defendant adopted and then adhered to its policy of not paying Plaintiffs overtime compensation during their training period despite having knowledge that they were working in excess of forty hours per week.

53.     In reckless disregard of the FLSA protection afforded Plaintiffs and similarly situated individuals, Defendant adopted and then adhered to its policy of paying Plaintiffs by the job and not providing them overtime pay for hours worked in excess of forty hours per week despite the fact that they knew Plaintiffs were working well in excess of forty hours per week following their training periods but before the mid-summer, 2004 meeting.

54.     In reckless disregard of the FLSA protection afforded Plaintiffs and similarly situated individuals, Defendant adopted and then adhered to its policy of paying Plaintiffs by the job and treating Plaintiffs as though they were working only forty hours per week, despite having knowledge

that they were in fact working well in excess of this following their training periods but after the mid-summer, 2004 meeting.

55.     At times, plaintiffs worked so many hours that their hourly rate of pay fell below $5.15 per hour.

56.     Before the mid-Summer, 2004 meeting, Defendants intentionally adopted this post-meeting policy in order to evade their obligations under the FLSA, and intentionally adopted a policy of intimidating their employees with the threat of termination so that they would only claim hours of less than forty per week.  At all times material, it was the intent of Defendant's policy that employees work substantially more than forty hours per week but only claim forty or less.

57.     Defendant was required, subject to criminal penalty, under the FLSA, 29 U.S.C. Sec. 215(a)(5), and the Ohio Minimum Fair Wage Standards Act, R.C. 4111.13(A), to maintain records of hours worked and pay that were not false in any material respect.


**V.     Collective Action Allegations**

58.     Plaintiffs Dominic Musarra, Kevin Klug and Charles Everett, Jr., bring this action pursuant to 29 U.S.C. Sec. 216(b) in their own behalf and as representatives of individuals similarly situated who are current or former employees of defendant who agree in writing to join the first cause of action seeking recovery under the Fair Labor Standards Act.

59.     The individuals similarly situated to Plaintiffs are all current and former employees of Defendant Digital Dish, Inc. who are or were employed to provide digital dish installation service to its clients at any time since June 2000 except for those whose claim would be barred by the statute

10

of limitations or those whose administrative and/or professional status exempts them from FLSA overtime pay protection.

60.     On information and belief, the individuals similarly situated to Plaintiffs include more than two hundred Satellite Technicians employed by Defendant, and Plaintiffs are unable to state the precise number of similarly-situated employees because that information is solely in Defendant's possession or control, but it can be readily ascertained from its employment records and the records of its payroll processor.

61.     This action is properly maintained as a collective action because in all pertinent aspects the employment relationship of individuals similarly situated to Plaintiffs are identical: they are or were assigned by Defendant to provide digital dish installation services in the homes of its customers; their compensation was calculated and paid under the same formula and in the same way as Plaintiffs' compensation; Defendant charged the customers for those services; and those customers did not act as employers of those individuals.

62.     The employment relationship with Defendant of individuals similarly situated to Plaintiffs differed primarily in only name, location, and amount of compensation.

63.     Any entitlement of Plaintiffs to overtime pay would be similar, except for amount, to the entitlement of individuals similarly situated to Plaintiffs.

64.     Plaintiffs share the same interests as similarly situated individuals.

## VI.    Class Action Allegations

65.    Plaintiffs' class under the Ohio Minimum Fair Wage Standards Act consists of all current and former employees of defendant Digital Dish Inc., who are or were employed to provide digital dish installation service in Ohio to its clients at any time since June 2000, except for those whose claim would be barred by the statute of limitations or those whose administrative and/or professional status exempts them from overtime pay protection.

66.    On information and belief, Plaintiffs' class includes more than two hundred digital Satellite Technicians employed in Ohio by Defendant, and Plaintiffs are unable to state the precise number of similarly-situated employees because that information is solely in Defendant's possession or control, but it can be readily ascertained from its employment records and the records of its payroll processor.

67.    This action is properly maintained as a class action because in all pertinent aspects the employment relationship of individuals similarly situated to Plaintiffs are identical: they are or were assigned in Ohio by Defendant to provide digital dish installation services in the homes of its customers; their compensation was calculated and paid under the same formula and in the same way as Plaintiffs' compensation; Defendant charged the customers for those services; and those customers did not act as employers of those individuals.

68.    The terms and conditions of the delivery of treatment by Plaintiffs' class were nearly identical in all respects material to this action and differed primarily in only name, location within the State of Ohio, and amount of compensation.

69.    Each member of Plaintiffs' class was denied overtime pay for work performed in Ohio in excess of forty hours per week.

12

70.     Any entitlement under the Ohio Minimum Fair Wage Standards Act of named Plaintiffs to unpaid overtime compensation, attorneys' fees, costs, and lost interest owed to them would be identical, except for amount, to the entitlement of the Plaintiffs' class.

71.     The Plaintiffs' named representatives share the same interests as the Plaintiffs' class and will be entitled under the Ohio Minimum Fair Wage Standards Act to unpaid overtime compensation, attorneys' fees, costs, and lost interest owed to them under nearly identical factual and legal standards as the remainder of the Plaintiffs' class.

72.     The Plaintiffs' named representatives are dedicated to securing appropriate compensation for Ohio Satellite Technicians and will fairly and adequately protect the interests of the class.

73.     The undersigned lead counsel is experienced in prosecuting class actions, is certified by the Ohio State Bar Association as a specialist in employment law, and has the material and personnel resources to fairly and adequately protect the interests of the Plaintiffs' class.

74.     Undersigned co-counsel has extensive experience in litigating wage and hour cases, and has the material and personnel resources to supplement undersigned lead counsel.

75.     The amount of unpaid overtime compensation and lost interest owed to individual members of Plaintiffs' class under the Ohio Minimum Fair Wage Standards Act is too small to attract legal representation on an individual basis or to risk the costs associated with litigation on an individual basis.

76.     The prosecution of claims under the Ohio Minimum Fair Wage Standards Act will not vary among Plaintiffs' class and instead will concern similar factual circumstances and identical legal contentions.

13

77.     Upon information and belief, no other litigation under the Ohio Minimum Fair Wage Standards Act has already been commenced by individual members of their class.

78.     The factual circumstances and legal contentions under Plaintiffs' claims pursuant to the Ohio Minimum Fair Wage Standards Act parallel those under the FLSA, and forcing Plaintiffs to bring a class action on those claims in an Ohio Court of Common Pleas while pursuing a collective action on their FLSA claims in this Court would waste judicial resources at both the State and Federal level.

79.     This class action can be efficiently and effectively managed by sending the same FLSA opt-in notice to all employees similarly situated and adding for the Ohio employees within that group a separate opt-out notice pertaining to their rights under the Ohio Minimum Fair Wage Standards Act.

## VII.   Claims for Relief

A.     First Count: Fair Labor Standards Act – Overtime Pay

80.     Paragraphs 1 through 79 above are fully realleged and incorporated herein.

81.     By not paying one-and-one-half times the regular hourly rate to plaintiffs and similarly situated individuals for hours worked in excess of forty hours each week, Defendant has violated the FLSA, 29 U.S.C. § 207(a).

B.     Second Count: Fair Labor Standards Act – Minimum Wage

82.     Paragraphs 1 through 81 above are fully realleged and incorporated herein.

83.     By not paying at least $5.15 per hour for all hours worked to plaintiffs and similarly situated individuals, Defendant has violated the FLSA, 29 U.S.C. § 206(a).

14

C.    Third Count: The Ohio Minimum Fair Wage Standards Act – Overtime Pay

84.    Paragraphs 1 through 83 above are fully realleged and incorporated herein.

85.    By not paying one-and-one-half times the regular hourly rate to plaintiffs and similarly situated individuals for hours worked in excess of forty hours each week, defendant has violated the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code Sec. 4111 *et seq.*

D.    Third Count: The Ohio Minimum Fair Wage Standards Act – Minimum Wage

86.    Paragraphs 1 through 85 above are fully realleged and incorporated herein.

87.    By not paying at least $5.15 per hour for all hours worked to plaintiffs and similarly situated individuals, Defendant has violated the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code Sec. 4111 *et seq.*


VIII.    **Prayer for Relief**

WHEREFORE, Plaintiffs, individually and on behalf of all other similarly situated individuals, prays that this Court:

a.    order the issuance of and publication of Notice of the Complaint and right of all similarly-situated employees to opt in;

b.    declare that this action is a collective action under the FLSA and a class action enforcing rights under the Ohio Minimum Fair Wage Standards Act;

c.    declare that Defendant has violated the FLSA and the Ohio Minimum Fair Wage Standards Act;

d.    order such equitable relief, including an award of overtime pay, as will make Plaintiffs and similarly situated individuals whole for Defendant's FLSA and the Ohio Minimum Fair Wage

15

Standards Act violations; liquidated damages in an amount equal to the overtime pay; pre- and post-

judgment interest; costs; and reasonable attorneys' fees; and

e.      grant such other relief as the Court may deem appropriate.

Respectfully submitted,

John S. Marshall (0015160) (*marshall@ee.net*)
Trial Counsel for Plaintiff
Edward R. Forman (0076651) (*eforman@ee.net*)
MARSHALL AND MORROW LLC
111 West Rich Street, Suite 430
Columbus, Ohio 43215-5296
(614) 463-9790
Fax (614) 463-9780

Robert DeRose (0055214)
(*bderose@barkanneff.com*)
Co-Counsel for Plaintiff
BARKAN + NEFF
360 South Grant Avenue
P.O. Box 1989
Columbus, Ohio 43216-1989
(614) 221-4221
Fax (614) 221-5808

OF COUNSEL:

Louis A. Jacobs (0002101) (*LAJOhio@aol.com*)
66871 Rayo Del Sol
Desert Hot Springs, CA 92240-1871
(614) 203-1255
Fax (760) 288-2146

16

## JURY DEMAND

Plaintiff requests a trial by a jury of eight (8) persons.

_____
John S. Marshall

B0430musarra.wpd

17