**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **DOMINIC MUSARRA,** *et al.***,** | : | |
| | : | |
| Plaintiffs, | : | Case No. C2-05-545 |
| | : | |
| v. | : | **JUDGE ALGENON MARBLEY** |
| | : | |
| **DIGITAL DISH, INC.,** | : | Magistrate Judge Norah M. King |
| | : | |
| Defendant. | : | |

**ORDER**

**I. INTRODUCTION**

This matter comes before the Court on Plaintiffs' Motion for Conditional Class Certification, Expedited Discovery, and Court-Supervised Notice to Potential opt-in Plaintiffs. For the reasons set forth herein, the Court **GRANTS** Plaintiffs' Motion.

**II. BACKGROUND**

**A. Facts**

Defendant Digital Dish ("Defendant" or "Digital Dish") is a privately-held, family-owned corporation whose primary purpose is to act as the Ohio Regional Service Provider ("RSP") for its parent company, DISH Network. Digital Dish possesses an exclusive license to deliver and install DISH Network equipment, which consists primarily of satellite dishes and receivers, in an area encompassing Ohio, and portions of Kentucky, Indiana, and West Virginia.

Each of the three originally named plaintiffs, Dominic Musarra ("Musarra"), Kevin Klug ("Klug") and Charles Everett, Jr. ("Everett") (collectively "Plaintiffs"), worked for Digital Dish as

a satellite technician ("technician")[1] during the time period between June 2003 and December 2004. Digital Dish employs approximately 300 such technicians at any given time. Technicians have a myriad of duties, but their primary responsibilities consist of building, installing, repairing, and removing digital satellite equipment for DISH Network customers.

Technicians typically receive their next day's work orders in the evening and pre-call customers to schedule service appointments in advance. The Digital Dish warehouses open at approximately 7:00 a.m each day. When a technician arrives at one of Digital Dish's warehouses in the morning,[2] he picks up the DISH Network equipment necessary to complete his day's assigned work orders. Prior to leaving the Digital Dish warehouse, technicians generally attach the mounting structure, arms, and certain low-noise block feedhorns to satellite dishes to make more space in their trucks. Further, technicians often spend fifteen to twenty minutes downloading the necessary programs onto the receivers set for delivery, so they can save time once they arrive at a customer's home.

With the equipment in hand, each technician then sets out to complete his day's schedule. In general, a technician's primary task is the delivery and installation of DISH Network equipment, but technicians also do repairs, upgrades, and returns. Each technician completes approximately two to three installations per day. After the technician completes a service call, he secures the customer's approval on a DISH Network Customer Service Agreement and (in the case of satellite

---

[1] Plaintiffs also refer to "satellite technicians" as "job based technicians."

[2] Technicians typically arrive at the Digital Dish warehouses around 6:30 a.m., and depending on their arrival time, the loading process usually takes them anywhere from one to three hours to complete.

receiver equipment installations) activates the customer's satellite subscription by contacting DISH Network.

### B. Procedural History

Plaintiffs Dominic Musarra, Kevin Klug, and Charles Everett, three former Digital Dish technicians, commenced this action by filing the original Complaint on June 3, 2005. The original Complaint contained four counts: (1) a claim for unpaid overtime pay under 29 U.S.C. §§ 201, *et. seq.*, the Fair Labor Standards Act ("FLSA"); (2) a claim for unpaid overtime pay under O.R.C. §§ 4111.01, *et. seq.*, the Ohio Minimum Wage Act ("OMWA"); (3) individual claims for unpaid wages under FLSA; and (4) individual claims for unpaid minimum wages under OMWA.

On September 28, 2006, this Court granted summary judgment against Plaintiffs, dismissing their FLSA claims by ruling that they were exempt by virtue of the Motor Carrier Act ("MCA"), and refused to exercise supplemental jurisdiction over the pendent state law claims. The Court noted, however, that on August 10, 2005, the "Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users" ("SAFETEA-LU") was enacted and consequently altered the exemptions under the MCA such that they no longer applied to companies not using vehicles that can be classified as "commercial motor vehicles."[3]

On November 11, 2006, Plaintiffs moved for permission to file a First Amended Complaint. This new complaint added five new named plaintiffs, all of whom had been employed by Defendant after August 10, 2005. Plaintiffs have subsequently filed opt-in notices

---

[3]There is no dispute amongst the parties that the Digital Dish technicians do not operate commercial motor vehicles.

for these five individuals, as well as three other technicians who were employed since August 10, 2005. In support of the First Amended Complaint, seven Plaintiffs have filed sworn declarations stating that they received instruction at training sessions attended by technicians based out of various Digital Dish facilities, after August 10, 2005, which explicitly told them that as a matter of company policy they would be terminated if they recorded working more than forty hours in a week.

Plaintiffs now ask the Court for entry of an order (1) conditionally certifying the proposed FLSA class, (2) requiring Defendant to identify potential opt-in plaintiffs by promptly responding to "Plaintiffs' First Interrogatories Directed to Defendant," and (3) implementing Court-supervised notice of Plaintiffs' FLSA claim to all potential opt-in plaintiffs.[4]

### III. STANDARD OF REVIEW

Separate from a FED. R. CIV. P. 23 class action, FLSA provides for collective action under 29 U.S.C. § 216(b). In relevant part, § 216(b) states:

> An action . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

An important difference between Rule 23 and § 216(b) is that the commencement of a collective action under § 216(b) does not toll the statute of limitations period for plaintiffs who have failed to opt-in. 29 U.S.C. § 255(a). A § 216(b) action may be commenced within two years after the

---

[4] On February 4, 2008, the Court granted final approval of a partial settlement agreement involving Plaintiff's state and federal minimum wage claims. Consequently, Plaintiff's minimum wage claims are no longer before the Court.

cause of action accrued, or within three years if the cause of action arises out of a willful violation. *Id.*[5]

Collective action under § 216(b) can be brought by an employee on behalf of himself and all other employees similarly situated. Courts have generally employed a two-tiered certification process for determining whether a suit can go forward as a collective action. *Harrison v. McDonald's Corp.*, 411 F.Supp.2d 862, 864 (S.D. Ohio 2005). The first step is the conditional certification stage, whereby the Court may approve notice of the pending action and the opportunity to opt-in if the plaintiff can demonstrate that he is similarly situated to the other employees he seeks to notify. *Id.* at 864-65. This first step only requires the plaintiff to put forth a modest showing that he is similarly situated to the potential opt-in employees. In the second stage, which comes after notification and time for discovery, the defendant can file a motion for decertification challenging the preliminary ruling that the other employees are indeed similarly situated. *Id.* Presently, this action is at the first stage of the certification process.

In the first stage, plaintiffs must only make a modest showing that they are similarly situated to the proposed class of employees. *Id.* "In order to establish that other employees are similarly situated to the named plaintiff, the named plaintiff need only show that [his] position [is] similar, not identical, to the positions held by the putative class members." *Pritchard v. Dent Wizard Intern. Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002) (internal citations omitted). Thus, similarly situated class members under FLSA are those whose causes of action accrued in approximately the same manner as the named plaintiff's. *Id.* (citing *Miklos v. Golman-Hayden Companies, Inc.*, No. 2:99-CV-1279, 2000 WL 1617969, at *1 (S.D. Ohio Oct. 24, 2000).

---

[5]In the present case, the cause of action began to accrue on August 10, 2005.

There is a lack of controlling precedent, however, for determining whether a plaintiff has sufficiently demonstrated the existence of a similarly situated putative class. The Sixth Circuit has yet to rule on the issue, and other courts are split as to what fulfills the plaintiff's burden to put forth a "modest showing." Two trends have emerged among courts in other districts and circuits. *See Sniffen v. Spectrum Indus. Serv.*, 2007 U.S. Dist. LEXIS 35206, at *4 (S.D. Ohio February 13, 2007). Some courts have held that a plaintiff can fulfill his burden at the conditional certification stage by simply alleging class-wide violations of FLSA in the complaint. *Id.* (citing *Pritchard*, 210 F.R.D. at 595). Alternatively, other courts have applied a more demanding test, requiring a factual showing. *Id.; see, e.g., Jackson v. New York Telephone Co.*, 163 F.R.D. 429, 431 (S.D. N.Y. 1995) (holding that plaintiffs are "required to demonstrate a factual nexus that supports a finding that potential plaintiffs were subjected to a common discriminatory scheme."). Courts requiring a factual showing have granted conditional certification where the plaintiff has identified potential plaintiffs, submitted affidavits of potential plaintiffs, or presented evidence of a widespread discriminatory plan. *Id.* (citing *Pritchard*, 210 F.R.D. at 596); *see, e.g., H&R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (refusing to grant conditional certification because plaintiffs had failed to "identify potential plaintiffs, submit affidavits of potential plaintiffs or submit any other evidence that might show a widespread plan of discrimination existed."). In the present case, Plaintiffs have met their burden under either standard.

## IV.  LAW AND ANALYSIS

### 1.  Similarly Situated

Plaintiffs ask the Court to certify as a class all technicians who have worked for Digital Dish since August 10, 2005.[6] Relying on their personal knowledge and deposition testimony of the then Digital Dish Director of Resources, Richard Schneider, Plaintiffs assert that Digital Dish employs roughly 300 technicians at any given time, and thus joinder of all potential plaintiffs is impracticable. Plaintiffs also rely on personal knowledge and Schneider's testimony to assert that all technicians have virtually the same duties, and that these duties have not changed from 2002 to the present.

The primary points of contention between the parties revolve around whether Plaintiffs have sufficiently alleged an illegal policy in use by Digital Dish, and whether any such policy would have effected the potential class in a manner that is conducive to collective action.  In support of their allegations, seven of the named Plaintiffs have filed declarations swearing that they were told during multi-facility training sessions, and by management, that they would be fired if they recorded more than forty hours of work on their invoices even though it was common knowledge throughout the company that technicians worked well in excess of forty hours.[7] Plaintiffs also submitted a confidential memorandum that was distributed company-wide, instructing technicians that they were not allowed to work more than forty hours in a week

---

[6]Beginning August 10, 2005, Digital Dish technicians were no longer subject to the MCA exemption, and thus the FLSA overtime requirements were applicable.

[7]Defendant argues that these alleged statements by managers are inadmissible hearsay and therefore should not be considered by the Court.  However, FED. R. EVID. 801(d)(2) clearly defines these statements as non-hearsay because they constitute admissions by a party opponent.

without the approval of a supervisor. Plaintiffs cite to two decisions by this Court, and one from the Northern District of Ohio, granting conditional certification after comparable showings by the plaintiffs: *Pritchard*, 210 F.R.D. 591 (holding that allegations of a class-wide failure to pay overtime were sufficient to grant conditional certification); *Sniffen*, 2007 U.S. Dist. LEXIS 35206 (granting conditional certification based on two affidavits and payroll records indicating a failure to pay overtime); and *Douglass v. GE Energy Reuter Stokes*, No. 1:07-CV-77, 2007 WL 1341779 (N.D. Ohio, April 20, 2007) (holding that two affidavits stating that overtime was not paid were sufficient to grant conditional certification).

  Defendant sets forth two arguments explaining why Plaintiffs have failed to meet their minimal burden. First, Defendant argues that Plaintiffs' allegations fail to aver that they and the proposed class members were victims of an illegal common policy or practice. Defendant argues that their written policies are legal on their face, and that Plaintiffs' allegations are vague to the point of being meaningless. With regards to the company-wide memorandum filed by Plaintiffs, which specifies that technicians will be terminated for working more than forty hours without permission, Defendant argues that this is a perfectly legal policy. Companies are allowed to regulate the total number of hours worked by their employees, and can fire employees who knowingly violate their policies. Defendant further argues that affidavits filed by Plaintiffs alleging that they were told they would be fired for recording more than forty hours of work even if they did indeed work more than forty hours, are too vague to be relied upon by the Court. Defendant bases this argument on the fact that the affidavits do not name specific Digital Dish employees who instructed Plaintiffs about this unwritten policy. *See Harrison*, 411 F.Supp.2d at 870-71 (holding that affidavits containing a significant level of uncertainty concerning whether

-8-

overtime was illegally withheld did not constitute a sufficient showing by plaintiff to warrant conditional certification).

Defendant's second argument is that Plaintiffs have failed to meet the threshold for conditional certification because their allegations will require a detailed examination of each technician's work day, rendering their claims unsuitable for collective action.  In support of this argument, Defendant relies on dicta from *Harrison* stating that the need for fact intensive individualized inquiry would present valid concerns for class certification.  *Id.*  Here, Defendant is arguing that the Court would be forced to examine every individual technician's work day in order to calculate damages.

Both of Defendant's arguments are unpersuasive at this stage of the proceedings. Defendant's first argument completely side-steps Plaintiffs' contention that the Defendant was officially putting one policy on paper, but unofficially threatening and enforcing a separate practice.  Plaintiff accurately relies on *Burry v. National Trailer Convoy, Inc.*, 338 F.2d 422, 426 (6th Cir. 1964), which held that an employer's written requirements limiting the number of hours an employee can work does not preclude a FLSA claim where the employer knowingly "suffers or permits" unpaid overtime work.  Defendant's argument that Digital Dish had no knowledge of undocumented overtime work taking place, purportedly distinguishing this case from the facts in *Burry*, is inappropriate at this stage in the proceedings considering that Plaintiffs need only put forth a modest showing.  Also, Defendant's assertion that Plaintiffs' affidavits are too vague dismisses the precedential value of this Court's earlier decisions that relied upon similar affidavit filings by plaintiffs at the conditional certification stage.  *See Pritchard*, 210 F.R.D. 591; *See also Sniffen*, 2007 U.S. Dist. LEXIS 35206.

Defendant's second argument, that if Plaintiff's claims are found to be valid then individualized scrutiny will be required, is also inappropriate at this stage of the proceedings. Defendant is unable to cite to any supporting case law from this district or from the Sixth Circuit, other than the dicta from *Harrison*.  Furthermore, this Court recently granted conditional certification under similar factual circumstances: "[T]he Court concludes that Plaintiff has set forth allegations of Defendant's class-wide practice of not paying overtime wages to its . . . technicians." *Pritchard*, 210 F.R.D. at 596.  In *Pritchard*, as is the case here, the Court granted conditional certification even though the class of technicians likely had varying amounts of unpaid overtime.  Also, as a policy consideration, inability to bring a collective action suit over unpaid overtime where the suggested class of employees were not all subject to the exact same amount of unpaid overtime would effectively prohibit such suits from being brought under FLSA.  There has been no argument from Defendant that this was the intent of Congress, and the Court finds nothing in § 216(b) to suggest such an intention.

Lastly, at the certification hearing, Defendant urged this Court to consider recent decisions from courts in other districts.  Specifically, Defendant cited a Magistrate opinion from the United States District Court for the Middle District of Florida, which refused to grant conditional certification under § 216(b) because the defendant in that case had failed to define the proposed class and his supporting affidavits claimed no knowledge of FLSA violations at any other company location other than Defendant's office.  *Gonzales v. Hair Club For Men, LTD., Inc.*, 2007 U.S. Dist. LEXIS 26160, AT *9-11 (M.D. Fl. Apr. 9, 2007).  In *Gonzales*, the court quoted the Eleventh Circuit's standard for evaluating conditional certification motions:

> "At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether

>     notice of the action should be given to potential [plaintiffs].  Because the court
>     has minimal evidence, this determination is made using a fairly lenient standard,
>     and typically results in conditional certification of a representative class."

*Gonzales*, 2007 U.S. Dist. LEXIS at *7 (emphasis added) (quoting *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001).  While the *Gonzales* case and the Eleventh Circuit's standard are in no way binding upon this Court, they do not conflict with the Court's decision to grant conditional certification.  Contrary to Defendant's assertion, *Gonzales* is inapposite.  Unlike the Plaintiff in *Gonzales*, Plaintiffs in this case clearly define the proposed class and their declarations in support claim first-hand knowledge of illegal practices being imposed upon technicians from multiple facilities.  Applying a lenient standard to the pleadings and affidavits submitted in this case, the Court finds conditional certification appropriate.

### 2.  The Jackson, Ohio Facility

In the alternative, Defendant argues that if certification is granted, it should be limited to the Jackson, Ohio Facility.  In support, Defendant points to the fact that all of the named Plaintiffs were employed out of the Jackson Facility and thus argues that they have no basis for making allegations concerning the entire class of Digital Dish technicians.  Defendant cites to cases from other courts and circuits, which found that allegations from employees in one locality did not warrant certification of a geographically broader class of employees.  *See De La Cruz v. El Paso County Water Improvement Dist. No. 1*, 2005 U.S. Dist. LEXIS 21244, (W.D. Tex. 2005) (holding that plaintiffs failed show that others were similarly situated because they relied solely on conclusory statements instead of affidavits or other forms of supporting evidence); *Torres v. CSK Auto, Inc.*, 2003 U.S. Dist. LEXIS 25092 (W.D. Tex. 2003) (holding that when

local employees simply theorize, without evidentiary support, they fail to meet their modest burden of showing that the illegal policy is widespread).

In response, Plaintiffs rely on the affidavits submitted. Plaintiffs argue that their affidavits attest to instructions given at multi-facility training events, and that the confidential memorandum filed was also distributed company-wide.

The Court is persuaded that illegal instructions given out, as a matter of course, at multi-facility training sessions are sufficient to warrant company-wide conditional certification. Here, unlike in *De La Cruz* and *Torres*, the Plaintiffs rely on affidavits that swear first hand knowledge of employees from various company locations being given the same illegal instructions. The Court will allow notice and discovery to go forward, and will re-visit this issue upon request in a motion for decertification.

## V.  CONCLUSION

The Court hereby **GRANTS** Plaintiffs' Motion for Conditional Class Certification, Expedited Discovery, and Court-Supervised Notice to Potential opt-in Plaintiffs.

Defendant's are ordered to promptly provide to Plaintiffs' counsel the names, last known addresses, and phone numbers of every individual who has been employed as a job based technician by the Defendant since August 10, 2005, so that they may be properly notified of the pending action. Defendant is ordered to provide the stated information by April 25, 2008. The notice period will be open for ninety days from Plaintiffs' receipt of the information. The proposed language for the notice submitted by the plaintiffs is hereby approved by this Court.

**IT IS SO ORDERED.**

    s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT COURT**

**Dated: March 24, 2008**