**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**DOMINIC MUSARRA,** *et al.*,

        Plaintiffs,

  vs.                            Civil Action 2:05-CV-545
                                   Judge Marbley
                                   Magistrate Judge King

**DIGITAL DISH, INC.,**

        Defendant.

<u>ORDER</u>

Plaintiffs bring this collective action under the FLSA, 29 U.S.C. §201 *et seq.*, alleging that defendant unlawfully denied plaintiffs minimum wage and overtime compensation in connection with their work as technicians for defendant, which serves as the Ohio Regional Service Provider for its parent company, DISH Network Service, L.L.C. ("DNS"). DNS has not been joined as a party to this action. Plaintiffs also assert class allegations under Ohio's Minimum Wage Act, O.R.C. §4111.01. This matter is now before the Court on plaintiffs' motion to compel DNS to produce subpoenaed documents. *Plaintiffs' Motion for Order Compelling Dish Network Service, L.L.C. to Produce Subpoenaed Documents*, Doc. No. 179 ("*Motion to Compel*"). For the reasons stated below, the *Motion to Compel* is **DENIED**.

**I.    BACKGROUND**

On March 24, 2008, the Court granted plaintiffs' motion for conditional class certification and expedited discovery. *Order*, Doc.

No. 130. Plaintiffs served a subpoena on DNS[1] requesting four categories of documents ("the subpoena"). *See* Exhibit 1, attached to *Motion to Compel*. DNS timely objected to the subpoena. Exhibit 2, attached to *Motion to Compel*. Counsel for DNS and plaintiffs communicated regarding the requested documents, but were unable to resolve their dispute. *See Attorney John S. Marshall's Declaration in Support of Plaintiffs' Motion for Order Compelling Dish Network Service L.L.C. to Produce Subpoenaed Documents*, Doc. No. 180, ¶¶ 5-6; *Dish Network Service L.L.C.'s Memorandum in Opposition to Plaintiffs' Motion for Order Compelling Production in Response to Suboena Duces Tecum*, Doc. No. 203, p. 1 ("*Memo. in Opp.*").

**II. STANDARD**

Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). "'The scope of examination permitted under Rule 26(b) is broader than that permitted at trial. The test is whether the line of interrogation is reasonably calculated to lead to the discovery of admissible evidence.'" *Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)(quoting *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 500-01 (6th Cir. 1970)).

Rule 45 of the Federal Rules of Civil Procedure provides that a person commanded to produce documents pursuant to a subpoena may serve an objection prior to the deadline specified in the subpoena or 14

---

[1] Plaintiffs contend that DNS "licenses Defendant Digital Dish, Inc. to be its Regional Service Provider. The record is clear that DNS was the source for much of the work technicians in the collective action performed." *Motion to Compel*, p. 3.

days after the subpoena is served. Fed. R. Civ. P. 45(c)(2)(B). Rule 45 also provides that "the issuing court must quash or modify a subpoena that. . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; or. . . subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A) (iii), (iv).

In determining whether a subpoena imposes an undue burden, a court considers "such factors as relevance, the need of the [requesting] party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *American Elec. Power Co. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999) (quoting *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 53 (S.D.N.Y. 1996)). "Courts are required to balance the need for discovery against the burden imposed on the person ordered to produce documents, and the status of a person as a non-party is a factor that weighs against disclosure." *Id*. Finally, the burden is on the party seeking information to "establish a need for the breadth of the information sought in response to [a nonparty's] *prima facie* showing that the discovery [would be] burdensome." *Katz v. Batavia Marine & Sporting,* 984 F.2d 422, 423-24 (6th Cir. 1993).

**III. DISCUSSION**

Plaintiffs contend that a reconstruction of work performed by plaintiffs or payroll records "is essential to their proof of [Fair Labor Standards Act] and Ohio Minimum Wage Act violations." *Motion to Compel,* p. 7. To that end, plaintiffs subpoenaed from DNS various

categories of documents characterized as "essential for the Plaintiffs' reconstruction of the hours they actually worked." *Id*. at 3. Plaintiffs seek four categories of documents covering the period August 10, 2005 to the present. Exhibit 1. The Court will address each category in turn.

### A. Copies of Documents Referencing Communications with Employees of DNS and Defendant (No. 1(a))

Plaintiffs first seek:

> Copies of all documents, whether kept on paper, electronic or any other format, referencing communications with employees of Digital Dish, Inc., involved in the installation, deinstallation, upgrading, changing, adapting and servicing of defendant's product in the homes of customers. This request includes, but is not limited to, any and all IVR[2] (possibly 'IDR') logs for this region and all other records of phone calls or other contact made by these employees to DISH Network and/or Digital Dish, Inc., and all other records of the beginning and end time of work of Digital Dish employees.

Request No. 1(a), Exhibit 1.

According to plaintiffs, they "had to report to DNS on a daily and task basis, and those reports should be reflected in the IVRs. . . . What the IVRs will show are the times that Plaintiffs performed their duty of calling DNS. Readily extrapolated from the IVRs, therefore, will be the times on any given day that Plaintiffs at least purported to be at work." *Reply Memorandum in Support of Plaintiffs' Motion for Order Compelling Dish Network Service L.L.C. to Produce Subpoenaed Documents*, Doc. No. 204, p. 5 ("*Reply*"). Plaintiffs argue that these records will provide probative evidence of the hours that they actually worked. *Id*.

---

[2]The Court understands the abbreviation "IVR" to mean "interactive voice response system."

4

DNS initially objected to this request as vague, overly broad, unduly burdensome not reasonably calculated to lead to the discovery of admissible evidence and requiring the disclosure of trade secret or other confidential information. Exhibit 2. More specifically, DNS first contends that it lacks the ability to electronically search for every phone call between a DNS employee and defendant's employees. *Memo. in Opp.*, p. 3 (quoting *Affidavit of Emily Pastorius*[3] ("*Pastorius Aff.*"), ¶ 2). Instead, DNS would have to spend "hundreds of personnel hours" to manually pull its phone records and attempt to identify phone calls responsive to plaintiffs' request from the mass of phone calls using defendant's telephone numbers. *Id*. DNS argues that such a search would impose a significant expense on it, a non-party, and is unlikely to lead to the discovery of admissible evidence. *Id*. DNS also contends that, although it has some IVR logs from the relevant time period, "it does not have the capability of electronically searching the IVR logs to sort them or to search through the logs themselves." *Id*. at 3-4 (citing *Pastorius Aff.*, ¶ 2(b)). "Consequently, even if the Subpoena is specifically limited to a production of IVR logs that relate to Ohio, it would still be necessary for DNS to manually search for and review the IVR logs to identify those that are responsive." *Id*. at 4.

DNS estimates that it would take more than 100 hours to search for and identify responsive documents. *Id*. (citing *Pastorius Aff.*, ¶ 2(b)). DNS contends that "the results of such a search would not necessarily provide pertinent information given that the logs will not

---

[3]Ms. Pastorius is corporate counsel with DNS. *Pastorius Aff.*, ¶ 1.

necessarily identify when a person started a particular task or project, how long a particular task or projected lasted, or when the task or project ended." *Id*. DNS again argues that its non-party status protects it from such expense and burden. *Id*.

In reply, plaintiffs modified their request, eliminating the request for telephone calls or contacts. *Reply*, p. 5. Plaintiffs instead seek only "IVR logs during the relevant time period (August 10, 2005 to the present) that include the region in which Defendant operated subject to a protective order that information regarding other regions and/or employees other than those of Defendant must be kept confidential, under seal, and redacted before admitting the logs into evidence." *Id*. at 2. Plaintiffs contend that this request, as now modified, decreases the scope of the request and "eliminates nearly the entire burden on DNS, which admits the existence of at least some IVRs." *Id*. at 5. Plaintiffs further argue that "DNS is not a stranger to this litigation, and its direct interaction with Plaintiffs has insinuated DNS far deeper in this litigation than a traditional non-party." *Id*.

Plaintiffs' arguments are not well-taken. First, the fact remains that DNS is not a party to this action and the burden that it should be expected to undertake in responding to discussion should be accordingly adjusted. Moreover, the request even as presently formulated seeks IVR logs during a three-year period for regions beyond the relevant region and would include information regarding individuals who are not defendant's employees. Finally, DNS represents to this Court that searching and analyzing the IVR logs would require more than 100 hours. *See Pastorius Aff.*, ¶ 2(b). The

Court agrees with DNS that this request, as presently formulated, is overly broad and would impose an unreasonable burden on this non-party. Accordingly, as it relates to category No. 1(a) as presently formulated, the *Motion to Compel* is **DENIED**.

**B. Contracts with Defendant (No. 1(b))**

Plaintiffs next seek:

> A copy of all contractual agreements with Digital Dish, Inc., including, but not limited to the service provider agreement.

Request No. 1(b), Exhibit 1.

DNS objects to production of these agreements as overly broad and unduly burdensome and because production of the agreements would require disclosure of confidential information. Exhibit 2; *Memo. in Opp.*, pp. 4-5. In addition, DNS states that these documents should be available to plaintiffs through discovery propounded to defendant. *Memo. in Opp.*, pp. 4-5; *Pastorius Aff.*, ¶ 3.

In reply, plaintiffs offer to limit this category "to contractual agreements with Defendant for the relevant time period (August 10, 2005, to the present) subject to a protective order that the agreements be kept confidential, under seal, and not proffered for admission into evidence without advance notice to DNS." *Reply,* at 2. Plaintiffs agree that defendant "should have such documents," but argue that "the burden of producing contracts is so slight that DNS's tactic of sending Plaintiffs elsewhere must be rejected. Whatever Defendants produce will be compared and contrasted with whatever DNS produces." *Id*. at 6.

Plaintiffs' argument is not well-taken. Because plaintiffs

7

concede that defendant should have possession of the requested contracts, the Court will not impose on this non-party the burden of producing documents presumably available to plaintiffs from a party to this litigation. *See*, *e.g.*, *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (upholding refusal to enforce subpoena issued to non-party where same documents were available from party opponent). Moreover, plaintiffs have not explained why a comparison of documents in the possession of defendant with those in the possession of DNS will assist plaintiffs in the prosecution of their claims. Accordingly, as it relates to category No. 1(b), the *Motion to Compel* is **DENIED**.

**C.     Company Policies Relating to Individuals (No. 1(c))**

Plaintiffs also seek:

> A copy of all company policies relating to individuals who install, service, adapt, deinstall, upgrade, change defendant's products in the homes of customers.

Request No. 1(c), Exhibit 1.

Plaintiffs contend that these policies are probative because "if the policies varied among the Regional Service Providers with whom DNS contracts, the variation may yield probative evidence of how and why Defendant Digital Dish, Inc. acted." *Motion to Compel*, p. 9.

DNS initially objected to this request because it is overly broad, unduly burdensome, does not seek information reasonably calculated to lead to the discovery of admissible evidence and would require the disclosure of confidential information. Exhibit 2; *Memo. in Opp.*, p. 5. In addition, DNS asserts that "if the Plaintiffs are in fact seeking the production of policies *from DNS* that relate to

individuals who are employed *by Digital Dish*, then DNS does not have any such policies." *Id*. at 5 (emphasis in original) (citing *Pastorius Aff.*, ¶ 4). Further, "DNS does not maintain a set of policies relating to individuals who are not employed by DNS, but who are instead employed by Digital Dish, and who perform the work described in Request "c" in the Subpoena." *Id*. (citing *Pastorius Aff.*, ¶ 4).

In reply, plaintiffs argue that a protective order as to these agreements would address any concerns of DNS. *Reply*, p. 6. Plaintiffs further contend that "DNS contorts the request into one seeking policies relating to Defendants' specific employees. Instead, Plaintiffs have sought DNS policies regarding employees in the same category and supposed that the policies would be generic rather than name specific employees of a contractor. Burden is negligible when a business is asked for policies in a particular timeframe about a particular topic." *Id*.

Plaintiffs' arguments are not well-taken. First, to the extent that plaintiffs seek copies of policies that relate to individuals who are employed by Digital Dish, DNS represents to the Court that it has no such policies. The Court can compel nothing more. Moreover, defendant's policies regarding its own employees are likely to be in the possession of defendant, and would be available to plaintiffs from that source. Second, to the extent that plaintiffs seek policies relating to the relationship between DNS and regional service providers other than defendant, this Court is not persuaded that such policies are reasonably calculated to lead to the discovery of admissible evidence. *See* Fed. R. Civ. P. 26(b)(1). Specifically, plaintiffs have not justified how review of confidential policies that

9

DNS shares with *other* service providers will provide insight into *defendant's* intent and practices relative to the issues presented in this case. Accordingly, as it relates to category No. 1(c), the *Motion to Compel* is **DENIED**.

**D.    Emails Between Defendant and DNS (No. 1(d))**

Finally, plaintiffs seek:

> E-mails by and between any person at Digital Dish and Dish Network, produced on a DVD in searchable format.

Request No. 1(d), Exhibit 1.

DNS initially objected to this request as vague, overly broad, not reasonably calculated to lead to the discovery of admissible evidence and unduly burdensome. Exhibit 2. More specifically, DNS contends that "[i]n order to respond to such a broad request, DNS first would be required to search every e-mail account of every DNS employee who worked during that time period, and determine whether e-mails from each account were to or from a Digital Dish employee." *Pastorius Aff.*, ¶ 5. DNS would have to expend "hundreds of hours" and incur "a massive expense" of "tens of thousands of dollars" to search for and review responsive e-mails. *Id*. DNS further contends that "Plaintiffs' offer to conduct all or a part of the search for e-mails does not resolve the issue, and does not eliminate the extraordinary burden and interruption to DNS and its business." *Memo. in Opp.*, p. 6.

In reply, plaintiffs first complain that DNS provided an affidavit from corporate counsel rather than from a DNS employee with personal knowledge of the computer filing systems to support its objections to the request. *Reply*, p. 1. Next, instead of seeking

10

three years of e-mails as originally requested, plaintiffs offer to limit the request "to a sample of e-mails accompanied by a description of the burden to make that sampling so that the requisite balancing can be informed by actual experience and a protective order that the e-mails must be kept confidential, under seal, and not proffered for admission into evidence without reasonable advance notice to DNS." *Id*. at 3. "The sampling could be for a two-week period, August 10-14, 2005, using keyword searches of Defendant's name, the names of Defendant's employees, and geographical locations within Defendant's region." *Id*. at n.2. Plaintiffs contend that "[w]hether the e-mails produce the information Plaintiffs expect – documentation of the times Plaintiffs were working on compensable tasks related to installation or service visits and references to the workload of Plaintiffs – can readily be ascertained." *Id*. at 6. Plaintiffs argue that this information is critical to their claims because, "absent a reconstruction of the hours they actually worked, Plaintiffs will be unable to prove that Defendant severely under-recorded those hours." *Reply*, p. 6.

Because plaintiffs narrowed this request only in the *Reply*, DNS has not had the opportunity to respond to whether or not it would agree to the proposed two-week sampling of e-mails. In light of the alleged economic burden and interruption to DNS and the purported significance of the e-mails to plaintiffs, the Court concludes that a response from DNS to the narrowed request is necessary to resolve this issue.

**WHEREUPON**, plaintiffs' *Motion to Compel* DNS to produce subpoenaed

documents is **DENIED** as to categories 1(a), 1(b) and 1(c).  DNS is **ORDERED** to respond to plaintiffs' proposal for a sampling of e-mails for the two-week time period described in the *Reply* within ten (10) days.


<u>October 29, 2008</u>               <u>     *s/Norah McCann King*     </u>
                                       Norah M<sup>c</sup>Cann King
                                United States Magistrate Judge